The U.S. Court of Appeals, we've got a pretty abbreviated calendar this week and only one case scheduled for today. So we'll go ahead and call it. It is case number 24-30688 Friels v. Warren. So that's our one and only argument today. So, Mr. Jensen, whenever you're ready. May it please the Court. I represent Demarcus Friels in a products liability action involving the Warren defendants and Daimler Trucks North America. The defendants in this case should be the focus of, I think, the issues today, primarily because the objective test for whether somebody has reasonably used a product in a reasonably ascertainable way focuses not just on the conduct of the plaintiff, but also on what the designer or manufacturer of the product knew or should have known as an objective test. And the overwhelming evidence in this case shows that they should have known of this type of use. Why would anybody want to go under a highway underpass with the truck elevated that way? No one would want to do that. So why is that not the end of the case? Why is that not the end of the case? It's not the end of the case because the fact that that occurs and can be designed out of the product by any objective means is available and knowledgeable to the designer. In other words, the intended use is not always the actual use. And the actual use in the real world involves what is commonly— Drunk people can drive drunk. Absolutely. What does that have to do with the— They have their airbags go off. If they have a defective airbag case and they're drunk and they run off the side of the road in contravention of every rule of law— But what was the—let me understand. There's no allegation that they tried to restore the correct position. The allegation here is that they neglected to do it, right? No. In this case, Mr. Friel's did activate the lowering mechanism and either through a mechanical malfunction or his misunderstanding of the actual device, the PTO, to lower it, it did not lower. There's no dispute that it did not lower, but under the factual record in this case, this court is bound by the fact that Mr. Friel's did not intentionally leave it up and he's entitled to all reasonable inferences from that. He did try to lower it. It just didn't lower. And frankly, because of the damage to the truck, there was no way for an engineer to go back later and figure out whether it was a mechanical issue or whether it was just Mr. Friel's not operating the operator. What does the record show about whether he knew it didn't lower? Was he aware it wasn't lowered? He did not know that it had not lowered. And the issue of whether he should have known goes to comparative fault. And that is a separate issue. Under the Bernard case, dealing with the propane tanks and the difference between intentional and inadvertent actions, just because Mr. Friel's knew in a general sense, as we all do, that you shouldn't drive the truck with the bed raised, that doesn't mean in the 30 seconds or so from the time he left the yard and actually impacted the concrete overpass, during that short amount of time, he may have some percentage of comparative fault for not noticing it, not being aware of it, not checking his mirrors, but that does not change the duty of the defendants to know that that is a reasonable, ascertainable use. The Louisiana Supreme Court has made it clear in numerous cases that inadvertent momentary lapses by drivers are completely ascertainable and known to manufacturers. In fact, the Louisiana Supreme Court said that its own State Department of Transportation could be held liable even though the driver in the case that was suing them had a momentary lapse and went off the road. They said you still have to . . .  What do you do with, quote, reasonably anticipated . . . Judge, I'm sorry. I just couldn't hear you. I'm sorry. No . . . What do you do with, quote, reasonably anticipated . . . With reasonably anticipated in this case . . . Whether he was using the dump truck, driving on the highway with the bed raised was reasonably anticipated. We know that it was reasonably anticipated by the manufacturer for one dispositive fact, and if I only make one point today that the court remembers, this is it. Both of these defendants sell for profit a speed limiter or install speed limiters or real-time raised bed alarms. You cannot sell a product whose only purpose is to prevent a raised dump truck from going into an overpass without reasonably anticipating that can happen and that that would be a reasonably anticipated use. It's like a flu vaccine manufacturer coming into the court and saying, well, yeah, we sell flu vaccines, but I don't know what the flu is. It doesn't make any sense. These defendants sell not on this particular truck, but in general, and they admit in the record, they sell real-time warning systems to prevent this actual reasonably ascertainable use, and that is a key and dispositive fact. A speed limiter has no purpose but to keep a raised bed dump truck from going at highway speed. This accident could have been prevented by that, but most importantly not whether it could or couldn't have prevented this accident. The most important thing for the court is that fact is dispositive as to why Mr. Friel's actions were reasonably ascertainable use. These defendants know it happens, and the reason they know it is we have patents going back to the 50s and 70s warning about these exact issues. We have government statistics that talk about the number of dump truck strikes and overhead passes, and it's significant. It's 16 percent of those commercial vehicle accidents. We have some . . . Yes, Judge. It doesn't reasonably anticipated apply to Friel's rather than the owners of the truck. No, Judge. The reasonably anticipated use is defined by what the objective ordinary person would do in a same or similar circumstance, but the Louisiana Products Liability Act says the manufacturer, if it is reasonably anticipated use, then the manufacturer must design around that, must manufacture around that. But how is it reasonably anticipated use to ignore clear warnings and engage in obviously dangerous conduct? Judge, first of all, we dispute that those are clear warnings, and they do have to be under both Fifth Circuit precedent and many district court cases interpreting that. It has to be a clear and unambiguous warning. Here Warren is the only entity that actually placed warnings on the vehicle, and they, by their own admission . . . On the vehicle, on the visor, on the body, in the manual? Yes, except they also in the manual said never do it, and then in other places they said, but it's okay to do it in some other places. So they have contradictory warnings that I think are more appropriately decided by a jury as to whether they are adequate warnings or not. They also have admitted that they are confusing warnings. That's in the record. One other thing on the warnings that I think is important to remember, and that is you can't warn away everything. And I'll give you an example. If you say, and you put a warning in the operator's manual for every car in the country, don't drive off the side of the road and hit a tree, we all know that you shouldn't do that, and the warning manual will tell you not to carelessly operate your vehicle, but that would not relieve a manufacturer for making a crash-worthy vehicle. For instance, seat belts or airbags still have to work even if you are not following their warning, and even if you are somehow violating that. But again, this goes back to intentional versus unwitting use. Mr. Friel's made a mistake. There is no question about that, but it was an unwitting mistake under this record. And that is treated differently under Louisiana law than intentional actions that clearly violate. And the most recent Louisiana Supreme Court case that just came down that counsel for the warrant entities brought to the court's attention, this Hardesty versus Walker case is a good example of that. The Caterpillar tractor that was involved in that case, they had a clear explicit warning that said don't hook a chain to this and try to pull anything. The operator of that hooked a chain to it, the chain broke, and there was an injury. I don't know all the details of it, but he clearly violated an express and clear warning. That's not what happened in this case. In this case, Mr. Friel's did not violate an express warning intentionally. He didn't go out and hook up a chain. He activated the button to lower the bed. But for whatever reason, whether it's mechanical or him not hitting the button the right way, it's kind of a complex operation, the bed did not lower. He's not guilty of intentionally not following the warning. In fact, you can make an argument he tried to follow the warning. It just didn't operate the bed the way the bed should be operated. But I thought your client, you say it was an unwitting? Yes. What do you mean by unwitting? He actually activated the lowering mechanism before leaving. He unwittingly drove on the road with the bed up. He did not- But he admitted that he could see that the bed was raised by looking through the rear view mirror, looking through the side mirrors. Judge, he had a 30-second window. The undisputed evidence in the case is from the time he lowered that to the time he hit the concrete barrier, the overpass, was about 30 seconds. Louisiana law says designers of products must take into account that people are human, that people have momentary lapses. And when the defendants sell products that are designed to specifically deal with these momentary lapses, they can't come into the court and speak out of both sides of their mouth and say, well, we make a profit off these particular items that would have given real-time warning to a driver who's having a momentary lapse, and then come into court and say, but we have no idea this could ever happen. You can't sell a product for a speed limiter and then say, we don't know this is ever going to happen. And that fact is admitted. There is no question in the record that both of these manufacturers sell and install speed limiters and are aware of them well before the time this vehicle was manufactured. So we have a particular individual who made a mistake. That's resolved by comparative fault, not by making the use not reasonably anticipated. The objective test. Is your point that the fact that they sell sort of mitigating safety devices means that the conduct has to be per se reasonably expected? No, but it means that they have to, they have actual. In other words, manufacturers could account for unreasonable actions and still want to protect people. They certainly can, but again, under the reasonable ascertainable use test as an objective test in Louisiana where the Supreme Court has said you have to plan around inattentive or folks that are having momentary lapses of knowledge, which again, there's no dispute. Mr. Friel's knew that the bed should be lowered. We all know the bed should be lowered. He made an inadvertent mistake. And the real question is, is do people in a better position to design and build these vehicles and prevent these accidents, do they have a duty under the law? If you take the defendant's position literally, if they put it in a manual, they don't have to protect you from anything. If they say don't drive your car off the side of the road, your airbag does not have to work under their view. And that's an example that's used in the Bernard case. Bernard, I'm sorry, my time is up. We'll see you back on rebuttal in a few. OK, thank you, Judge. Mr. Phillips. Good morning, Your Honor. Daniel Phillips for the Louisiana Office of Risk Management. Just two quick points. I wanted to make sure that the court understands that this is not just an issue that affects Mr. Friel's. The state of Louisiana has been paying workers' compensation benefits to Mr. Friel's indemnity and medical expenses since his accident. So the taxpayers of Louisiana have a stake in this as well. The second point is that we'll just reemphasize the fact that this was an unintentional accident. Nobody's suggesting that Mr. Friel's drove with the bed up. He just didn't notice that it was up. He says that this was his fifth or sixth load of the day. It was toward the end of the day. He had gone, he had dumped his load, pushed the joystick forward, released the power takeoff, turned his attention to the traffic, turned right onto a highway, and then just drove, what was it, a third of a mile or half a mile down the road where he hit the overpass. It was a brief time. Should he have noticed it? Nobody's saying that he shouldn't have. Nobody's saying that he couldn't have. But the fact is, we're all humans. We all do things like that where we make mistakes sometimes. We don't do the things that we should do. That's what this case boils down to, is that if there was an alarm, if there was a visual indicator, a light in the driver's field of view, he would have been able to unmistakably have known that the bed was still up when he took off. So is that a fair assumption? He doesn't notice the bed up, but he'll notice a light? If it's in front of his face, sure, because that's the point. If you're a driver of a dump truck, you're not looking behind at the dump truck, you're looking forward. I mean, when we drive, we have mirrors. Sure, we can see behind us, right? But that doesn't mean we always start looking at it at the same time. But if you're negligent, you're negligent. Right. But if you're not noticing, you're not noticing. Right, and nobody's saying that Mr. Friels wouldn't share in some of the liability here, but this is a comparative liability issue. Couldn't this turn on reasonably anticipated? Yes, so we would suggest that the court look to Barnard versus Feralgas. That's a Third Circuit case from the state of Louisiana. That's a much more comparable case to what we have here today, because it involved a gentleman who was trying to light a smoker with two different valves. He had to open the first valve, then light the gas, then open the second valve. If you open the second valve first, then gas can be released, and it could explode. So that's what happened. This sophisticated user who had been warned not to open the second valve before lighting the gas, who had done this many times before and knew what he was doing, he went out there, and there was an explosion, and unfortunately he was killed. And the allegation was that he inadvertently opened that second valve with his foot, and that's what caused the explosion. The trial court dismissed the case on a directed verdict after the plaintiffs put their case on. The Third Circuit reversed. They said, this is a potentially dangerous product. They said, this is a question for the jury that the jury should have decided. Even though he was warned, even though he was a sophisticated user, even though he knew that he shouldn't have opened that valve, he may have inadvertently opened the valve in the first place. So now the reasonably anticipated use, the court doesn't expressly address that, but they do note that the product was unreasonably dangerous, or should say that a jury should decide whether the product was unreasonably dangerous for a reasonably anticipated use. They focus on the unreasonably dangerous part. The fact that they don't talk about the reasonably anticipated use suggests that just lighting the smoker and using the smoker and operating it the way you're supposed to was the reasonably anticipated use. So if we take those principles and apply them here, just driving the dump truck is the reasonably anticipated use, not specifically driving with the bed raised. So that's, we have. Why not? Because accidents can happen. I mean, nobody's going to suggest that he was actually trying to drive this truck with the bed raised. He just didn't realize that it was down. He put the joystick forward, turned his attention to the traffic. It was reasonably anticipated that he wouldn't look, that he wouldn't bring it down. I, well, again, we go back to Bernard versus Ferrel Gas. Maybe the issue is not whether that specific use of driving the truck unintentionally with the bed raised is the reason for the anticipated use. Well, he'd driven it for years. Right. He had been driving trucks for years. These kind of trucks. Yes, sir. Yes, Your Honor. And even the most experienced of us can have momentary lapses of concentration. Yes, but it's not reasonably expected that you'd do so. Well, if that's the case, then what are warnings for? What are the warning devices for? We don't need to warn people of things that they know, right? We just need to warn people of things that they don't know. Hey, you know, you're, if a truck is backing up, we have the beepers that go beep, right? Warning is don't forget. Right. It's backing up. Already make sure you know. Reasonably anticipated. It's, well, in the Bernard versus Ferrel Gas case, I would say just driving the truck would be reasonably anticipated. But can accidents happen? Sure. That's what these manufacturers have to take into consideration. They did everything possible. I'm sorry? They did everything possible. Well, except to put a visual warning that the bed was raised or in the driver's field of view or an audible alarm that the bed was raised or a speed limiter that would limit the speed. I mean, again, you talk about the field of view. I mean, he admitted he could see whether the bed was raised by looking in the rearview mirror. That's in his field of view. But you still have to look in the rearview mirror. I mean, you have to look to see if the light is on. Well, again, nobody's suggesting that he shouldn't have looked or shouldn't have done that. And that's obvious. He should have checked to make sure that it was down. But he didn't. People do that all the time. We make mistakes. And this would have warned him that the bed was raised. And he wouldn't have made this mistake that cost him the use of his legs. Mr. Phillips, thank you very much. Thank you. All right. We're now going to hear from counsel for Warren Incorporated et al. Mr. Butler, welcome. Good afternoon.  Your Honor, one of the things I'd like to begin by noting is that plaintiff's counsel made reference to a reasonably ascertainable use. That's not the standard in Louisiana. It's reasonably anticipated, not ascertainable. He talks about them. What's the difference? Well, reasonably anticipated has a very specific definition under Louisiana law, which is interpreted from the perspective of the manufacturer of it. Additionally, if a manufacturer specifically warns against a specific use, then that, by its definition, is not a reasonably anticipated use. The cases counsel are citing, too, about momentary inattention, I think all those cases involve highway cases involving the state of Louisiana. We're not dealing with product liability cases like we are in this case. Mr. Friels testified that he knew he wasn't supposed to drive with the bed up. He knew that that was part of his training. There's also a state law that says a truck driver shall not drive with a load higher than 13 feet 6 inches. When this bed is fully raised, it's almost 18 feet. Clearly, it's not going to go under many things at 18 feet. The manufacturer does not have to anticipate that the driver is going to drive with the bed up, when simply by looking at the vehicle, you would know that it's unsafe in that condition. And also, we have a professional driver who's driven trucks for 10 years for the state of Louisiana dump trucks. He knows about these problems. At the time of this incident, the state of Louisiana had 515 dump trucks in its fleet. Assuming they each only made five trips a day, that comes up to 5,100 trips per day just for the state of Louisiana. When you count all the trucks in the country, the cases and incidents cited in Plaintiff's Brief about a Google search finding 45 incidents of this happening over a period of 40 years is not very strong to show that this is a common occurrence. The definition for reasonably anticipated use now is narrower than it was pre-Louisiana product liability use. The Hardesty case is really on point here. It was just decided in June by the Louisiana Supreme Court. Similar arguments were made, such as the fact that the manufacturer specifically provided a warning is an acknowledgment that they were aware of the risk. That was rejected by our Supreme Court as not being relevant. It has to be reasonably anticipated from the understanding of the manufacturer. Hardesty also held that knowledge of a potential and actual intentional abuse of a product does not create a question of fact on the question of reasonably anticipated use. We believe in this case that Mr. Friels was aware that this was dangerous. There was a warning light in the vehicle. If he'd have looked at his side view mirrors, he could have seen the bed was up. The entire back window of this truck is blacked out when the bed is down. Said warning light in the vehicle. How is that different than the warning light that counsel was saying should have been in the vehicle? What they're saying is it should have been on the dashboard rather than down on the console. Location. And there's nothing to indicate, there's no case law or anything that addresses that situation. The notion of speed limiters, I don't believe there's any evidence in the record that my client, the Warren defendants, had a speed limiter feature available or was sold on their vehicles. We would agree that this is not an intentional misuse. But if you find that an accidental misuse for a momentary inattention is enough to prove a product's liability case, the exception is going to consume the whole rule. How should it affect our analysis that Mr. Friel claims that he used his controls to lower the bed and for whatever reason, the bed did not lower as it was designed to lower. So how should that factor in? In our opinion, he still has the obligation to make sure his bed is below 13 feet 6 inches. He's supposed to look to check to make sure the bed closed. Also, the lights on the vehicle would have indicated that the bed was still raised at that time. The vehicle was inspected very thoroughly by all the experts. Nobody found any defect. This is Mr. Friel's after the fact saying, yes, I know I lowered it. No, I have no idea why it was still up. He knew he shouldn't drive with the bed up. He was going 45 miles an hour. He underwent one overpass, and he didn't hit it. And he hit the second one. I think that overpass was, the first one was very high given the height of the vehicle. He would not have probably been able to go under any power lines or anything with the bed raised at 18 feet. Mr. Friel's had extensive experience. He had a CDL license. He had continued training from the state. He had 10 years of use in driving dump trucks for the state. He certainly is a sophisticated user of the vehicle. We don't think the momentary inattention argument carries the day, because lots of accidents happen because of momentary inattention. Doesn't the sophistication cut against you? I mean, if he's sophisticated, then he knew to deploy the button. And doesn't that suggest, then, that the button didn't work? Or that he didn't actually deploy the button. Well, I thought you just said he was sophisticated. He would know that every time you read it, you have to lower it. Even sophisticated users make mistakes. He admits that he would not have driven the truck with the bed raised. The evidence is that he could have seen the bed being raised from both of those side view mirrors, as well as the rear view mirror of the truck. He could have told that the bed was not down. Additionally, with the bed sticking 18 feet up in the air, going 45 miles an hour, there should have been other signs that there was something wrong with the vehicle. He didn't detect those. He ran into it. These trucks are driven regularly all over the country. Plaintiff's counsel pointed to a law in Massachusetts. That law was passed in 2009. In the 16 years since that law was passed, no other state has adopted the Massachusetts law that requires the audible warning device. The federal government hasn't adopted it. It's not common use. It's not required under any law or statute. And therefore, to say it's defective because it doesn't have a device that's not required by any government other than the state of Massachusetts and the United States would not be proper in this case. Anything else? I believe that's it. OK, Mr. Butler, thank you very much. Thank you.  Counsel for Daimler, Ms. Polk? Good afternoon.  Good afternoon. May it please the court, Janika Polk on behalf of Daimler Trucks North America. Critical to the analysis specific to Daimler Truck is the fact that Daimler Truck North America is not in the business of manufacturing dump trucks. And Daimler played no part in producing the component at issue? That is absolutely correct. It is improper under Louisiana law to even conduct an analysis of Louisiana product liability law unless you can establish that the party at issue, the entity actually manufactured the product that is alleged to have caused the harm. In the record at ROA 24 Appendix A, we have pictures of the product for which Daimler Trucks manufactured. It is an incomplete vehicle that is regulated by federal law and recognized under Louisiana law. The incomplete vehicle consists of a cab and a chassis. Daimler Truck is an expert in manufacturing cabs and chassis. When Daimler Truck receives an order for a vehicle that has as its intended use to be a dump truck, that cab and chassis has to be sent to an expert in the field of manufacturing dump truck bodies. Here, that was Warren. So the fact that the district court was absolutely correct in granting summary judgment on the basis of reasonably anticipated use, we fully agree with that. But there's another argument available to Daimler Truck that has not been recognized by the court, at least in the writings. And it is critical under Louisiana law that manufacturers only be held responsible for products for which they actually had some control over. And if we look to the product liability statutes, it tells us that a manufacturer is defined as an entity in the business of manufacturing a product, making, fabricating, fabricating, constructing, designing, remanufacturing, reconditioning. Daimler Trucks did none of that. Daimler Trucks actually had zero visibility to the installation of the vocational body of a dump truck. Daimler Trucks had zero control over what was done. Daimler Trucks is not in the business to even make a recommendation to the DOTD or Warren regarding safety features for a dump body. It is not a business that this company is an expert in. For those reasons, all of the comments by Mr. Friel's attorney regarding what Daimler Truck could have done are completely inaccurate and not supported by the record. The record makes clear... It's not liable for a defect it did not create. That's absolutely correct, and the statutes say it. The defect must have existed at the time the product left the custody and control of the manufacturer. When the product left Daimler Truck, there was no dump body on it. If there's no dump body and no associated functionality with the rising and lowering of the dump body, all done by Warren, there was a complete inability for Daimler Trucks to have even done what Mr. Friel's counsel has suggested to this court it could have done. And Louisiana law has never in place that sort of duty on a manufacturer. It is well settled and understood under Louisiana law that vehicles can be manufactured in multiple stages. Many products have multiple manufacturers, and the law imposes the duty, the responsibility to not have an unreasonably dangerous product on the manufacturer of that product. What is being asked of this court is to drastically expand the concept of manufacturer liability and essentially rewrite the statutes to broaden the definition of a manufacturer to make a manufacturer liable for a product that is subsequently incorporated or subsequently added to its product. And that is simply not the law. There are no cases that have been submitted to this court that support that position. Other than not being a manufacturer of the product at issue, the district court correctly ruled going through the analysis set forward in the Broussard case and followed by the Campton case, followed by the Payne case, and a number of other cases that we have submitted to this court that show that reasonably anticipated use, which is the standard, and it is a threshold issue. If reasonably anticipated use is determined by the court to be a question of law, which it can be determined to be a question of law, by going through the analysis, the analysis involves was it an obvious and known danger. The record tells us, yes, it was. Mr. Friels himself admits that he knows that was dangerous, that he shouldn't have done that. Another question that the court will look to in terms of the analysis of reasonably anticipated use is what were the instructions? Well, the record reflects that the Louisiana Department of Transportation trained Mr. Friels not to drive on the highway with his dump bed raised. We also know that there were express warnings, and the discussion about whether or not there was conflict in the warnings really has no moment in this case because Mr. Friels makes clear that he was not confused. He fully understood that that was a dangerous action to drive on the highway at 45 miles per hour with a dump bed raised. These are the types of factors that the court looks to. The fourth factor is sophistication. He was a certified commercial truck driver. There is significant training that goes into that because there are dangers associated with. 30 seconds is a long time. Mr. Friels had ample opportunity. Had he followed his training, this accident would not have happened. There were rear view mirrors. There were side view mirrors. There was a light. There was also a tactile alert that Mr. Friels would be able to feel when the dump bed was lowered. It was his responsibility to make sure that that dump bed was fully lowered, not only for his safety, but for the safety of others traveling on the interstate. The reality of the situation here is that plaintiff's counsel is asking you to judge Mr. Friels' conduct through this structure of comparative fault. But what product liability law in Louisiana is is that you don't get there if you cannot meet the threshold issue of reasonably anticipated use. If the court determines, as the district court did here, that a manufacturer should not reasonably anticipate one to drive on an interstate with the dump bed raised, then that is a question of law. And summary judgment can be granted on those claims, and it acts as a bar to recovery. It acts as a bar to recovery if you cannot satisfy that essential element of reasonably anticipated use. And for those reasons, in addition to the fact that Daimler Truck is not a manufacturer of the product that is alleged to have caused the harm, summary judgment was correctly granted by the district court and we would ask that it be affirmed. Ms. Polk, thank you very much. Mr. Jensen, you're back for three minutes. Just picking up on Ms. Polk's argument, Daimler, tell me if you disagree, they built a generic truck chassis, that's it. I mean, the thrust of your argument seems directed at Warren. Daimler built a generic chassis, and the supposedly insufficient warning system only seems to come into play after the addition of the truck bed by Warren. Judge, the plain language of the Louisiana Products Liability Act gives about seven different ways you can be a manufacturer. They meet five of them. It's in the brief, it lays it all out. All I'm asking the court to do is follow the plain language of the statute, and they meet five of those seven elements, including that they sold it under their own badge. That independently makes you a manufacturer. And also, what's been told to the court is not the full story. After Warren put the dump body on, it was then sent back to the Louisiana DT&A dealer, who had every opportunity to add, change, do whatever they wanted to do, and then sold to the state of Louisiana. In addition, all of the DT&A documents, and they admit this, they knew it was going to be a dump truck. This isn't like a cab chassis that they send off to a generic lot, and then people buy it and add. They knew exactly what this truck would be, and they have an option for a speed limiter that when it was ordered, they could have said, put the speed limiter on it. It's needed for safety. They could have said when it was ordered through their dealer by the state of Louisiana, you need to have a real-time alarm. And this ties us back. I want to follow up on that, because I want to make sure I understand the defect that's alleged. I'm looking at page 20 of your opening brief. Yes, sir. The subject vehicle was unreasonably defective and dangerous due to its, and you mentioned three things, inadequate dump bed light, lack of an audible alarm for a raised bed, and its lack of a speed limiter. Do I understand that correctly? I believe so, Judge, and I'm not sure if my original pleading might have something broader than that. I was under a severe word limitation to answer two briefs in one brief, so I don't know if I included every long-term- Those are your opening briefs. Those are the- You opened. Yes. This is your opening brief. Yes, I understand. You're not responding to anything. Okay, so that's the scope of the defect. It's not that the button didn't work. It's that- That's correct. Okay. I'm saying this based on something you said during opening time that confused me, so just to be very clear, the defect is not that it didn't work. It's that there should have been these additional warnings. Correct. Our position is the truck was so damaged in the accident, we don't know whether there was a mechanical malfunction or whether Mr. Friel's thought he did- Well, during your opening time, you implied that there was a defect in the operation, and it sounds like that's not been briefed. No, and Judge, I specifically said it also that Mr. Friel's may not have hit the button correctly, so we are not making any manufacturing defect. It's a design defect case. And my time is up. Okay. Thank you for your hos- Okay. Appreciate it. That'll conclude argument today in our one and only case, and we'll take this under advisement, and circle back with all deliberate speed. Y'all have a great day. Thanks very much. Bye.